Slip Op. 20-99

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINDAL POLY FILMS LIMITED OF INDIA, | |
| Plaintiff, | |
| v. | Before: Leo M. Gordon, Judge |
| UNITED STATES, | |
| Defendant, | Court No. 19-00043 |
| and | |
| DUPONT TEIJIN FILMS, MITSUBISHI POLYESTER FILM, INC., AND SKC, INC., | |
| Defendant-Intervenors. | |

**OPINION**

[Final Results sustained.]

Dated: July 14, 2020

Lizbeth R. Levinson, Ronald M. Wisla, and Brittney R. Powell, Fox Rothschild, LLP of Washington, DC, for Plaintiff Jindal Poly Films Limited of India.

Sonia M. Orfield, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel was Elio Gonzalez, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

Patrick J. McLain, Sarah S. Sprinkle, and Stephanie E. Hartmann, Wilmer, Cutler, Pickering, Hale, and Dorr, LLP of Washington, DC for Defendant-Intervenors Dupont Teijin Films, Mitsubishi Polyester Film, Inc., and SKC, Inc.

Gordon, Judge: This action involves the final results of an administrative review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty

order covering polyethylene terephalate film, sheet, and strip ("PET Film") from India. See Polyethylene Terephthalate Film, Sheet and Strip from India, 84 Fed. Reg. 9,092 (Dep't of Commerce Mar. 13, 2019) (final results admin. review) ("Final Results"), and accompanying Issues and Decision Memorandum, A-533-824, (Dep't of Commerce Mar. 5, 2019), available at https://enforcement.trade.gov/frn/summary/india/2019-04624-1.pdf (last visited this date) ("Decision Memorandum").

Before the court is the USCIT Rule 56.2 motion for judgment on the agency record filed by Plaintiff Jindal Poly Films Limited of India ("Jindal"). See Mem. in Supp. of Jindal's Rule 56.2 Mot. for J. on the Agency R., ECF No. 36[1] ("Pl.'s Br."); see also Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 38 ("Def.'s Resp."); Def.-Intervenors Dupont Teijin Films, Mitsubishi Polyester Film, Inc., and SKC, Inc.'s Mot. in Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 39 ("Def.-Intervenors' Resp."); Pl.'s Reply Br., ECF No. 40 ("Pl.'s Reply"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c) (2012). For the reasons set forth below, the court sustains Commerce's Final Results.

---

[1] All citations to parties' briefs and the agency record are to their public versions unless otherwise noted.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## I.      Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The two-step framework provided in Chevron, U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984) governs judicial review of Commerce's interpretation of the international trade laws of the United States. See United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous."). The court first considers whether Congressional intent on the issue is clear, and if not, whether Commerce's interpretation is reasonable. Chevron, 467 U.S. at 842–45. If the agency's interpretation is reasonable, albeit not the only or even preferred reasonable interpretation, it must withstand judicial scrutiny. See NSK Ltd. v. United States, 115 F.3d 965, 973 (Fed. Cir. 1997); Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994).

## II.      Discussion

19 U.S.C. § 1673 directs Commerce to impose an antidumping duty ("AD") "in an amount equal to the amount by which the normal value exceeds the export price (or constructed export price)." 19 U.S.C. § 1673. The statutory regime defines "export price" as the price at which subject merchandise is first sold, before it is imported, by a producer or exporter outside the United States and purchased by an unaffiliated purchaser in the United States. 19 U.S.C. § 1677a(a). In calculating the export price, Commerce is directed to adjust that price by "the amount of any countervailing duty

[("CVD")] imposed on the subject merchandise … to offset an export subsidy." 19 U.S.C. § 1677a(c)(1)(C). The purpose for the adjustment ("export subsidy offset") is to prevent a "double application" of duties. See Decision Memorandum at 6 (explaining that "the basic theory underlying [§ 1677a(c)(1)(C)] is that, in parallel AD and CVD proceedings, if Commerce finds that a respondent received the benefits of an export subsidy program, it is presumed the subsidy contributed to lower-priced sales of subject merchandise in the United States market. Thus, the subsidy and dumping are presumed to be related ….").

Here, Commerce used the export subsidy rate from the final results of the 2015 administrative review of the CVD order ("2015 CVD Final Results")[3] covering the subject merchandise to adjust the export price of Jindal's PET film in the underlying AD administrative review. Id. at 5. Commerce explained that its practice is to use export subsidy rates only from the "most recently completed" CVD administrative review in calculating the export subsidy offset under § 1677a(c)(1)(C), which in this case was the 2015 CVD Final Results. Id.

Jindal challenges Commerce's decision to use the 2015 CVD Final Results, arguing that § 1677a(c)(1)(C) requires Commerce to use the export subsidy rate from the preliminary results of the CVD administrative review contemporaneous to the underlying AD administrative review. Pl.'s Br at 7–11 (citing Polyethylene Terephalate Film, Sheet & Strip from India, 83 Fed. Reg. 39,677 (Dep't of Commerce Aug. 10, 2018) ("2016 CVD Preliminary Results")). In addition to its legal challenge, Jindal also contends that it was

---

[3] Polyethylene Terephthalate Film, Sheet and Strip from India, 83 Fed. Reg. 5,612 (Dep't of Commerce Feb. 8, 2018)

unreasonable for Commerce to refuse to "await" the final results of the 2016 CVD administrative review. Pl.'s Br. at 13.

In the underlying AD administrative review, Commerce determined that the term "imposed" on the subject merchandise as used in § 1677a(c)(1)(C) permits it to use the "most recently completed" final results of a segment of a CVD proceeding, regardless of the contemporaneity of those results with the period of review ("POR"). <u>Decision Memorandum</u> at 6. Jindal disagrees maintaining that the statute requires Commerce to calculate an export subsidy offset using the export subsidy rate from the preliminary results of the 2016 CVD administrative review because they are contemporaneous with the POR covered by the final results from the underlying AD administrative review. Pl.'s Br. at 11–12. More specifically, Jindal argues that the duties calculated in the 2015 CVD administrative review cannot constitute a CVD "imposed" on merchandise imported in 2016-17 and covered by the subject administrative review. Pl.'s Br. at 5-6; Pl.'s Reply at 2.

The parties agree that § 1677a(c)(1)(C) is "silent or at least ambiguous with respect to the meaning of the term "imposed", arguing that the resolution of the issue hinges on whether Commerce's interpretation of the term is reasonable under the two-step framework set forth in <u>Chevron</u>, 467 U.S. at 842-43 <u>See</u> Pl.'s Br. at 7 (noting that court should determine whether Commerce's interpretation of "imposed" is permissible under <u>Chevron</u> step two, citing <u>Serampore Indus. v. United States</u>, 11 CIT 866, 870, 675 F.

Supp. 1354, 1358 (1987)); Def.'s Resp. at 6 (arguing that "Commerce's interpretation of the statute is reasonable and entitled to <u>Chevron</u> deference").

Jindal maintains that the court previously addressed the meaning of the term "imposed" in <u>Dupont Teijin Films, USA v. United States</u>, 27 CIT 1817, 297 F. Supp. 2d 1367 (2003), <u>aff'd</u>, 407 F.3d 1211 (Fed. Cir. 2005) ("<u>Dupont Teijin</u>"). <u>See</u> Pl.'s Br. at 8–9; <u>see also</u> Def.'s Resp. at 5–6 (citing <u>Dupont Teijin</u>). Jindal argues that <u>Dupont Teijin</u> stands for the importance of connecting the actual "imposition" of countervailing duties with the calculation of the export subsidy offset. <u>See</u> Pl.'s Br. at 8–11. Specifically, Jindal contends that <u>Dupont Teijin</u> "upheld Commerce's interpretation that [§ 1677a(c)(1)(C)] requires [the agency] to increase export price by the countervailing duties attributable to export subsidies imposed under a countervailing duty order <u>that has been issued</u>." <u>Id.</u> at 8. Accordingly, in Plaintiff's view, Commerce's use of the non-contemporaneous <u>2015 CVD Final Results</u> to adjust Jindal's export price in the <u>Final Results</u> was not in accordance with law. <u>Id.</u> at 8–11.

In <u>Dupont</u>, the U.S. Court of Appeals for the Federal Circuit addressed Commerce's interpretation of the term "imposed" in § 1677a(c)(1)(C) in an AD investigation where Commerce was attempting "to account for expected countervailable export subsidies calculated in a concurrent [CVD] investigation" prior to the issuance of a CVD order. <u>See</u> <u>Dupont</u>, 407 F.3d at 1212-15. Critically, no CVD order had been issued, and thus no export subsidy rates, contemporaneous or otherwise, were available for Commerce to use in calculating an export subsidy offset. Ultimately, the

Court affirmed Commerce's interpretation of the term "imposed" to require "the issuance of a CV duty order before CV duties can be used to offset the export price in the calculation of the dumping margin." Id. at 1219.

Given that the factual circumstances and the nature of Commerce's determination in Dupont are significantly different from those in this matter, Plaintiff's reliance on Dupont is misplaced. Here, Commerce used the export subsidy rates from its "most recently completed administrative review of the parallel CVD order" to calculate the export subsidy offset in an administrative review of a previously issued AD order. See Decision Memorandum at 6. Commerce explained that it does not use preliminary rates in an on-going contemporaneous review to calculate the export subsidy offset "because those rates are not final, have not been commented on by parties, and are subject to change, and thus cannot be considered "imposed." Id. The court does not see any tension between Commerce's use of the export subsidy rate from the "most recently completed" CVD administrative review in this matter and Commerce's decision, sustained as reasonable in Dupont, to calculate the export subsidy offset in an AD proceeding only after a corresponding CVD order had been issued. See Dupont, 407 F.3d at 1219.

Jindal next argues that here Commerce unreasonably departed from prior agency practice in interpreting the term imposed in § 1677a(c)(1)(C). Pl.'s Br. at 9–10. None of the cited agency determinations support Jindal's preferred interpretation—that the term "imposed" in the statute mandates Commerce to use export subsidy rates from a contemporaneous (parallel) CVD administrative review rather than those from a segment

of a CVD proceeding covering a different POR, in this case the 2015 CVD Final Results.
To the contrary, these determinations support Commerce's determination. See Certain
Hot-Rolled Carbon Steel Flat Products from India, 71 Fed. Reg. 40,694 (Dep't of
Commerce July 18, 2006) (Commerce used export subsidy rates from most recently
completed CVD administrative review, which merely happened to be contemporaneous
with AD review, to calculate export subsidy offset); Carbazole Violet Pigment 23 from
India, 83 Fed. Reg. 15,788 (Dep't of Commerce Apr. 12, 2018) (where Commerce had
not completed administrative review of CVD order, agency used export subsidy rates from
original CVD investigation to calculate export subsidy offset); PET Film, Sheet, and Strip
from India, 73 Fed. Reg. 7,252 (Dep't of Commerce Feb. 7, 2008) (after failing to adjust
AD rate in preliminary results by any export subsidy offset, Commerce used final CVD
export subsidy rate to adjust export price in final results of review).

Problematically for Plaintiff, there are other determinations that also support
Commerce's practice.[4] See, e.g., Citric Acid and Certain Citrate Salts from the People's
Republic of China, 80 Fed. Reg. 77,323 (Dep't of Commerce Dec. 14, 2015), and
accompanying Issues & Decision Memorandum at cmt. 12, A-570-937, (Dep't of
Commerce          Dec.          7,          2015),          available          at
https://enforcement.trade.gov/frn/summary/prc/2015-31427-1.pdf (last visited this date)
(calculating respondent's export subsidy offset based off of "most recently completed
CVD review," and explaining, "[i]n this instance, although the timing of the AD and CVD

---

[4] The court notes that Plaintiff failed to cite these determinations that run adverse to its
position in its USCIT Rule 56.2 opening brief.

proceedings are technically not parallel, as noted by Petitioner, the Department finds that the 2012 CVD proceeding is the most appropriate proceeding upon which to base the export subsidy adjustment because it is the most recent data."); <u>see also</u> <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China</u>, 84 Fed. Reg. 36,886 (Dep't of Commerce July 30, 2019) (adjusting U.S. price in 2016–2017 AD administrative review using export subsidy rates in most recently completed CVD administrative review covering calendar year 2015); <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China</u>, 80 Fed. Reg. 40,998 (Dep't of Commerce July 14, 2015) (offsetting AD margins in administrative review using export subsidy rates found in final determination of CVD investigation that was most recently completed segment of CVD proceeding). Accordingly, Commerce's interpretation of § 1677a(c)(1)(C) is reasonable.

Jindal also contends that Commerce should have calculated the export subsidy offset by using the export subsidies calculated in the 2016 CVD administrative review for the partially overlapping period of review dates. Jindal Br. at 9–14. Commerce explained, however, that the preliminary results of the ongoing CVD administrative review were not final, had not been commented on by parties, and were subject to change. <u>Decision Memorandum</u> at 6. Commerce reasoned that the preliminary results of the 2016 CVD administrative review were of no legal effect under the statute and imposed no countervailing duties on Jindal. <u>Id.</u> Commerce further explained that those preliminary results did not reflect the ultimate, final determination of Commerce as to the amount of countervailing duties imposed on Jindal to offset export subsidies. <u>Id.</u> Commerce

therefore determined that it could not use the preliminary results from the ongoing 2016 CVD administrative review when calculating the offset. Id. This is no different from what Commerce has done in similar circumstances.

As a final tack-on, alternative argument, Jindal contends that even if Commerce's interpretation of § 1677a(c)(1)(C) was reasonable, Commerce nevertheless unreasonably failed to await the publication of the final results of the 2016 CVD administrative review before concluding the Final Results. Pl.'s Br. at 13. According to Jindal, "had Commerce waited only a matter of weeks, it would have had a definitive measure of the countervailing duties **imposed on the subject merchandise**…to offset the export subsidies." Id. Jindal therefore seeks an affirmative injunction directing Commerce to temporally align its AD and CVD reviews. Id.; see also Pl.'s Reply at 4 ("align the two [proceedings] … where the [CVD] final results were due very shortly after the final [AD] results"). All Jindal offers in support of this relief is a naked assertion, unadorned by citation, that given the "ease with which Commerce could have extended its proceeding, the agency should have aligned the final results of both the [AD] and [CVD] reviews." Pl.'s Reply Br. at 4. Defendant-Intervenors correctly point out that Jindal fails to provide any analysis of the respective statutory and regulatory provisions governing deadlines and extensions of final determinations in antidumping and countervailing duty proceedings. Def.-Intervenors' Resp. at 4–5. The court obviously needs more than a bare assertion to support an affirmative injunction ordering Commerce to align the proceedings. Jindal cannot leave the burden to the other parties and the court to frame

Jindal's argument within the applicable web of statutory and regulatory provisions.[5] The court will therefore deem this argument waived. <u>Cf</u>. <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); <u>see also</u> <u>JBF RAK LLC v. United States</u>, 991 F. Supp. 2d 1343 1356 (2014) (citing <u>Zannino</u>). The court does simply note that where the statute expressly addresses a temporal alignment of AD and CVD proceedings, albeit <u>investigations</u>, it only confers an express right on <u>petitioners</u> to require alignment; it does not confer a corresponding right on respondents like Jindal. <u>See</u> 19 U.S.C. § 1671d(a)(1).

### III. Conclusion

For the foregoing reasons, the court sustains the <u>Final Results</u>. Judgment will enter accordingly.

_____/s/ Leo M. Gordon_____
Judge Leo M. Gordon

Dated: July 14, 2020
    New York, New York

---

[5] The court notes that Plaintiff's reply brief does not address Defendant-Intervenors' waiver argument.